## Appeal of BUTLER'S WAREHOUSES, INC.    Docket No. 22.

An operating loss sustained by a taxpayer, incorporated during the calendar year 1919, from the date of incorporation to December 31, 1919, is not a legal deduction from gross income in an income-tax return for the calendar year 1920.

Submitted November 24, 1924; decided March 23, 1925.

*Edward P. Leeds, Esq.*, for the taxpayer.

*Willis D. Nance, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and SMITH.

This appeal is from a deficiency in income and profits taxes for the calendar year 1920 in the amount of $1,429.77. From the pleadings and evidence submitted the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized under the laws of the State of New York, January 17, 1919.

2. At the date of incorporation it acquired a stone warehouse 50 years old at a cost of $60,000 and 24 frame tenements 30 years old at a cost of $40,000. During the year 1920, in order to comply with the fire laws of the State of New York, it became necessary to tear out 84 windows, 2 skylights, and other parts of the warehouse and to substitute therefor iron shutters; in the same year it was required by the same authority to remove certain plumbing consisting of 1

toilet and 2 'or 3 sinks, from each of the 24 tenements owned by it. In its income-tax return for the calendar year 1920 the taxpayer deducted from gross income $3,600 as a loss sustained from the scrapping of the windows, window frames, and other material taken from the warehouse, and $2,160 as a loss sustained from the removal of the sinks and toilets from the frame tenements—a total deduction of $5,760. This amount is alleged to represent the depreciated cost of the materials scrapped. The Commissioner has disallowed the deduction of this $5,760 in the audit of the return.

3. The contractor who made the additions and alterations in the taxpayer's warehouse and tenements in 1920 deposed that he did not know when the windows were originally installed, but that the cost of second-hand frame and sash in 1920, such as those which had been removed from the building, would be about $10 delivered to the job; that the value of the panes of glass in the windows was nothing, as a large number were broken. He also deposed with respect to the plumbing which was removed from the tenements that one toilet and two or three sinks were removed from each house; that some of the sinks were very old; that of the plumbing fixtures removed from the tenement houses operated two-thirds were comparatively new and one-third very old; that the age of the old fixtures was about 25 or 30 years; and that the new fixtures removed came into the market about 15 years prior to 1920.

4. The taxpayer sustained a net loss of $4,865.10 from business operations for the period January 17, 1919, to December 31, 1919. The Commissioner has disallowed the deduction of this net loss from the gross income of the year 1920 in the amendment of the taxpayer's tax return for 1920.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

LANSDON: This appeal raises the questions: (1) Whether the taxpayer is entitled to deduct from gross income in computing its net income for 1920 the amount of $5,760 claimed to represent the depreciated cost of windows, skylights, plumbing, and other parts of its warehouse and tenements torn out and removed in that year; and (2) whether it is entitled to deduct from its gross income for 1920 a net loss sustained by it from operations during the period January 17, 1919, to December 31, 1919.

The taxpayer acquired the warehouse and tenements referred to on January 17, 1919, at a cost of $100,000. No part of the purchase price was specifically for windows, skylights, toilets, or sinks; no separate capital accounts were carried upon the taxpayer's books for the assets which were torn out and removed during the year 1920. The windows were old and had many panes of glass broken. The only evidence before the Board shows that they were worthless as second-hand windows. The toilets and sinks removed also had only a nominal value as second-hand fixtures. The evidence does not prove a deductible loss from this transaction.

The second issue relates to the right of the taxpayer, under the provisions of section 204 of the Revenue Act of 1918, to deduct from its gross income for the calendar year 1920 the net loss sustained by it from operations for the period January 17 to December 31, 1919. The part of section 204 here pertinent is as follows:

(b) If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by Title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year.

If the taxpayer had been incorporated and had been engaged in business during the calendar year 1918, there is no doubt but that a net loss which was sustained by it during the calendar year 1919 could have been deducted from the net income of the year 1918, and any excess of the net loss could be deducted from the gross income of the year 1920. The taxpayer was not, however, in existence during the year 1918, and the question arises as to whether its situation is any different from what it would have been if it had been in existence during that year. The taxpayer claims the right to make the deduction under the decision in the *Appeal of Carroll Chain Co.*, 1 B. T. A. 38. In that appeal it was held that a corporation which was organized in November, 1921, and made its first income-tax return for the period from the date of incorporation to June 30, 1922, sustaining a net loss for the period, was entitled to deduct that net loss from the gross income of the succeeding taxable year.

In the interpretation of a taxing statute it is of paramount importance to determine the intention of the law-making body in the enactment of the statute. At the time that the revenue bill, which later became the Revenue Act of 1918, was under consideration in Congress, the armistice was signed (November 11, 1918). It was at once apparent to Congress that there would be a period of readjustment following the war and that many corporations which had made large profits during the first part of the year 1918, and had on hand large stocks of goods, would sustain material losses in the disposition of them. The Revenue Act of 1918 (H. R. 12863), as first passed by the House, contained no net-loss provision. The Senate Finance Committee wrote in as amendment No. 26 a very liberal net-loss provision. During the discussion of the bill in the Senate numerous amendments were offered which had a tendency to liberalize the provision. Not one of these was adopted. The net loss provision was substantially altered and restricted in the conference committee and, as reported out of the conference and as enacted into law, bore slight resemblance to the original provision adopted by the Senate. In the report of Mr. Kitchin for the conference managers of the House, the following statement was made:

* * * The net loss relief provision in the Senate amendment was extended indefinitely and reached back to 1916. After discussion of the matter the con-

ferees agreed that it was wiser and safer to limit those relief provisions for the one year, *for the transition period from war conditions to peace conditions, and extend it just for this year, 1919.* Both of those provisions are innovations in American tax laws. They exist to a certain extent in the British tax laws. * * *

Another innovation to which I have referred, which the Senate put in the bill, was the net loss provision. As I said, the Senate had the time unlimited for the future, and it reached back to the taxes of 1916; that is, the Senate provision permitted a redetermination of the taxes as far back as 1916 and for all time in the future. The conferees finally concluded that the best thing to do *was to limit it to the transition period; in other words, the one year 1919. The inventory and net loss relief provisions are emergency provisions,* and the conferees agreed to treat them in that way. The net loss provision is this: If a business or trade shows in 1919, in its fiscal year, between October 31, 1918, and January 1, 1920, which includes the calendar year of 1919, a net loss instead of a net profit, it can take the amount of that loss from the income *upon which it paid the taxes for 1918* and have the 1918 tax redetermined, just as I explained in the case of the inventory, and have the difference between the tax paid and the tax as redetermined refunded to it. In other words, if the trade or business made $500,000 clear net profit in 1918, and this year—1919— during the transition period, instead of making a profit it loses $100,000, then we permit that business to go to the commissioner and ask for a redetermination of its tax for 1918. The commissioner will deduct from the income of $500,000 as returned for 1918 the $100,000 loss, leaving $400,000. Upon the basis of $400,000 income the 1918 tax will be recomputed, and the difference between the tax paid on the $500,000 and the tax computed on $400,000 income will be returned to the taxpayer.

These are two relief provisions in the bill which the House conferees thought were right and proper as *modified* by the conferees * * *. (Italics ours) (Vol. 57, page 3006 of the Congressional Record).

Senator Smoot, in addressing the Senate on the compromise, adverted to the restrictive alterations of the amendments, with some attempt to minimize the scope of the changes. Yet he advanced as a reason for the law as enacted an interesting thought. To use his language:

* * * *They have been changed * * * so that there could be no misconstruction on the part of the Commissioner of Internal Revenue in favor of the taxpayer.* (Vol. 57, page 3268 of the Congressional Record).

It thus appears that section 204 was designed to correct the 1918 reported income so that it reflected more nearly the true business earnings. It was the thought of Congress that inflated valuations, paper profits, and large profits due to war conditions would disappear and that industry would become stabilized after the "transition period; in other words, the year 1919." To record a true income and adjust tax for 1918 the losses during 1919 should reduce an income computed while the inflation was existent. It was manifestly the legislative intent to adjust the war-profits taxes of 1918, and the right conferred of applying the excess of the 1919 net loss over 1918 net income against the 1920 net income should only be granted to corporations whose income was affected by war conditions. If there was no 1918 net income there was no condition as to excessive war taxes to adjust and no reason for the application of section 204. This intent of Congress is further manifested by the fact that Congress, in enacting section 204, provided that only the net loss sustained by a taxpayer for a taxable year beginning after *October 31, 1918,* and ending prior to January 1, 1920, could be deducted. October 31, 1918, was the last day of the month preceding the signing of the armistice.

We do not think, however, that it is necessary to refer to the discussions in Congress for the purpose of ascertaining the intention

of Congress in the enactment of section 204. The statute itself contains much intrinsic evidence to the effect that it was the intention of Congress merely to permit a taxpayer who had made large profits in 1918 and was subject to the high tax rates of that year to obtain the benefit of the deduction of a net loss. Section 234 (a) (14) of the revenue act in question contains evidence to this effect.

It will be noted from the foregoing that the considerations for the enactment of the net-loss provision of the Revenue Act of 1918 were materially different from those which prompted the enactment of section 204 (b) of the Revenue Act of 1921. In the circumstances, we are of the opinion that the decision in the *Appeal of Carroll Chain Co., supra*, is not controlling in the appeal of the instant taxpayer. It was not in existence during any part of the year 1918. The express provisions of the Revenue Act of 1918 to the effect that the net loss of 1919 shall first be applied against the net income of 1918 can not be carried out. In our opinion the action of the Commissioner in disallowing the deduction of the claimed net loss was correct.